

**ANDREA F. ROCCO**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

New Case Electronically Filed:
October 17, 2014 09:59

By: TERRY H. GILBERT 0021948

Confirmation Nbr. 261932

ANITA ARRINGTON-BEY, ADM.          CV 14 834416

   vrs.

CITY OF BEDFORD HEIGHTS, ET AL.        **Judge:**

STUART A. FRIEDMAN

**Pages Filed:** 17

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| ANITA ARRINGTON-BEY,<br>Administratrix of the Estate of<br>OMAR K. ARRINGTON-BEY,<br>2533 Cheshire Road<br>Shaker Heights, OH 44120, | )<br>)<br>)<br>)<br>)<br>) | CASE NO. _____<br><br>JUDGE _____ |
| Plaintiff, | )<br>) | |
| -vs- | )<br>) | |
| CITY OF BEDFORD HEIGHTS,<br>5661 Perkins Road<br>Bedford Heights, OH 44146, | )<br>)<br>)<br>) | |
| -and- | )<br>) | |
| OFFICER TIM HONSAKER,<br>5661 Perkins Road<br>Bedford Heights, OH 44146, | )<br>)<br>) | **COMPLAINT** |
| -and- | )<br>) | **(Jury Demand Endorsed Hereon)** |
| OFFICER MAURICE ELLIS,<br>5661 Perkins Road<br>Bedford Heights, OH 44146, | )<br>)<br>) | |
| -and- | )<br>) | |
| OFFICER PHILLIP CHOW,<br>5661 Perkins Road<br>Bedford Heights, OH 44146, | )<br>)<br>) | |
| -and- | ) | |

1

| | |
|---|---|
| DAVID LEONARDI, | ) |
| ASSISTANT POLICE CHIEF, | ) |
| 5661 Perkins Road | ) |
| Bedford Heights, OH 44146, | ) |
| | ) |
| -and- | ) |
| | ) |
| JEFFREY MUDRA, | ) |
| CORRECTIONAL OFFICER, | ) |
| 5661 Perkins Road | ) |
| Bedford Heights, OH 44146, | ) |
| | ) |
| -and- | ) |
| | ) |
| CHERYL SINDONE, | ) |
| CORRECTIONAL OFFICER, | ) |
| 5661 Perkins Road | ) |
| Bedford Heights, OH 44146, | ) |
| | ) |
| -and- | ) |
| | ) |
| ARNOLD FELTOON, M.D., | ) |
| MEDICAL DIRECTOR | ) |
| BEDFORD HEIGHTS CITY JAIL, | ) |
| 5661 Perkins Road | ) |
| Bedford Heights, OH 44146, | ) |
| | ) |
| Defendants. | ) |

## INTRODUCTION

1. This case seeks damages arising out of the death of Omar Arrington-Bey while in the custody of the Bedford Heights Police Department on June 21, 2013. On that day, Omar Arrington-Bey died a tragic and entirely preventable death, as a result of the unconstitutional deliberate indifference and willful, wanton, and reckless behavior of the Defendants.

2

2. Defendants Officer Tim Honsaker, Officer Maurice Ellis, Officer Phillip Chow, Assistant Police Chief David Leonardi, Officer Jeffrey Mudra, and Officer Cheryl Sindone displayed a deliberate indifference to the serious medical needs of Omar Arrington-Bey. The actions and omissions of these Defendants are both the actual and proximate cause of the death of Omar Arrington-Bey.

3. Further, Plaintiff seeks damages against Defendant Dr. Arnold Feltoon, contractor and Medical Director for the Bedford Heights City Jail, for providing constitutionally and professionally inadequate medical care and health service at the Jail, and for breaching his duty of reasonable care.

4. Plaintiff also jointly and severally seeks damages against Defendant City of Bedford Heights for failing to adequately supervise, train, and institute adequate policies and procedures for officers on the provision of mandatory mental health screenings and treatment for inmates at its jail facility.

5. Plaintiff's decedent, Omar Arrington-Bey, left behind a wife, three children, as well as parents and siblings, who have all suffered great losses and emotional distress as a result of Omar's wrongful death. Plaintiff Anita Arrington-Bey, as the Administratrix of the Estate of Omar Arrington-Bey, seeks compensatory and punitive damages under federal and state law claims against the Defendants. The Plaintiff also seeks declaratory and injunctive relief, attorney's fees, costs, and other relief.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to both state and federal claims. The amount in controversy, exclusive of interests and costs, exceeds the jurisdictional amount. Venue is appropriate as this cause of action arose in Cuyahoga County.

7. Plaintiff seeks damages in accordance with Sections 2125.01, 2125.02 and 2305.21 of the Ohio Revised Code, otherwise known as the "wrongful death" and "survivor" statutes. Plaintiff also seeks damages pursuant to 42 U.S.C. Sections 1983 and 1988.

## PARTIES

8. Plaintiff Anita Arrington-Bey is a citizen of the United States and of the State of Ohio, and a resident of Cuyahoga County. She is the Administratrix of the Estate of Omar K. Arrington-Bey. Prior to his death, Omar Arrington-Bey was also citizen of the United States and the State of Ohio, and a resident of Cuyahoga County. Plaintiff Anita Arrington-Bey sues as Administratrix of the Estate, on her own behalf, and on behalf of the next of kin and survivors.

9. Defendants Phillip Chow, Tim Honaker, and Maurice Ellis, at all times relevant, were police officers for the City of Bedford Heights, and were under a duty to protect life in a lawful manner, and to obey the Constitution, laws, and statutes of the State of Ohio, and the United States. They are being sued individually and in their official capacity.

10. Defendant David Leonardi, at all times relevant, was the Assistant Chief of Police for Bedford Heights Police Department. As such, he was in charge of all named Defendant officers, and involved in the actions and omissions which directly and proximately caused the death of Omar Arrington-Bey. He is sued individually and in his official capacity.

11. Defendants Jeffrey Mudra and Cheryl Sindone, at all times relevant, were correctional officers for the Bedford Heights City Jail, and were under a duty to protect life in a

lawful manner, and to obey the Constitution, laws, and statutes of the State of Ohio, and the United States. They are being sued individually and in their official capacity.

12. Defendant Dr. Arnold Feltoon is employed by the City of Bedford Heights as a Contractor responsible for medical care and treatment in the Bedford Heights City Jail, and as Medical Director for the Bedford Heights City Jail, and is responsible pursuant to Ohio Adm. Code 5120:1-8-09 for the health and medical wellbeing of inmates at the Bedford Heights City Jail.

13. Defendant City of Bedford Heights, at all times relevant, designated the Bedford Heights Police Department to run the day-to-day administration of the Bedford Heights City Jail. The City of Bedford Heights is a political entity/subdivision and is subject to being sued pursuant to 42 U.S.C. Section 1983.

14. At all times relevant hereto and in all their actions described herein, the Defendants acted under color of law pursuant to their authority.

## FACTS

15. Decedent Omar Arrington-Bey had serious mental health issues. As of June 21, 2013, 38-year-old Omar had been struggling with bipolar disorder for nearly two years. His disease was getting the best of him.

16. He was a loving husband to his wife, Sultaana, and father, to his three children, Daija, Tasnam, and Amari.

17. His mental health interfered on occasion with his ability to function day-to-day, and eventually affected his job at Lowe's, located at 24500 Miles Road in Bedford Heights, Ohio.

18. According to his supervisor, Omar was a great employee at Lowe's until his mental health deteriorated approximately one month prior to the events that led to his death. At that time, Omar was admitted to MetroHealth Hospital to be treated for his bipolar condition. As a result of

the subsequent absenteeism due to his hospitalization, Omar's employment at Lowe's was terminated.

19. On June 21, 2013, Plaintiff Anita Arrington-Bey, Omar's mother, drove Omar to Lowe's to pick up his final paycheck. Plaintiff Anita Arrington-Bey had driven Omar to Lowe's on at least three prior occasions to pick up his last pay check. However, each prior attempt at collecting Omar's final paycheck was unsuccessful because Lowe's staff were either unavailable or failed to follow up on his requests for the check.

20. Plaintiff Anita Arrington-Bey and Omar arrived at Lowe's at approximately 9:15 AM on June 21, 2013. Omar's behavior was already off balance that morning. According to Plaintiff Anita Arrington-Bey, Omar approached a stranger who was playing guitar in the Lowe's parking lot. Omar entered the stranger's vehicle and began singing and rapping with this stranger for fifteen minutes. Omar eventually exited the vehicle and entered Lowe's.

21. Once inside Lowe's, Russell Nelson, the manager on duty at Lowe's at that time, explained that Omar was walking around and talking to anyone near him. Nelson asserted that Omar was acting bizarrely. Nelson then asked Omar to leave, without giving him his paycheck. Unable to get his final paycheck for the fourth time, Omar became upset and began screaming and spilled some paint cans onto the floor. Russell Nelson called the police.

22. Omar left the store and began changing his clothes in the parking lot, stripping off the outer layer to reveal a different outfit underneath. He got into Plaintiff Anita Arrington-Bey's car.

23. Defendants Officer Tim Honsaker and Officer Maurice Ellis received a "radio dispatch call" to respond to the Lowe's store regarding a male that "was out of control." Defendant Officer Phillip Chow also responded to this radio dispatch.

6

24. While they were pulling into the parking lot, the police officers received several descriptions of Omar as he changed his clothes in the parking lot. Upon their arrival, a Lowe's employee told the officers that Omar had just left in a blue or black Mercury.

25. Omar's mother, Plaintiff Anita Arrington-Bey, was driving the vehicle, unaware of the extent of the events that had happened inside Lowe's. The police officers located her vehicle exiting the parking lot, and Honsaker and Ellis were able to stop the car on Miles Road.

26. Defendant Officer Ellis approached the passenger side of the vehicle, where Omar was sitting. Defendant Officer Ellis observed Omar "just rambling and talking." This strange behavior would have tipped Ellis off on decedent Omar Arrington-Bey's mental health breakdown.

27. Defendant Officer Honsaker then placed the decedent Omar Arrington-Bey under arrest for criminal damage and disorderly conduct. Defendant Officer Ellis searched Omar, and found a bottle of medication in his pocket. The medication was prescribed to Omar for his psychiatric condition. This medication would have put Defendants on notice that decedent Omar Arrington-Bey was suffering from mental illness and required treatment.

28. After placing Omar under arrest, Defendant Officer Maurice Ellis interviewed Plaintiff Anita Arrington-Bey to obtain vital information about the decedent. At this time, Plaintiff Anita Arrington-Bey told Defendant Officers Ellis and Honsaker that Omar was bipolar and had not been taking his medication. Defendant Officer Ellis inquired as to what medication the decedent Omar Arrington-Bey required, and Plaintiff Anita Arrington-Bey told him that it was Seroquel. Defendants had actual knowledge of the decedent Omar Arrington-Bey's untreated mental illness and diminished mental state.

29. Defendant Chow states that he assisted Honsaker and Ellis in the arrest and also observed Omar "ranting and raving."

Electronically Filed 10/17/2014 09:59 / / CV 14 834416 / Confirmation Nbr. 261932 / CLJSZ

30. Despite having observed what, by their own account, was erratic behavior, and despite being warned by decedent's former supervisor of decedent's probable mental breakdown, and despite finding psychotropic medication on the decedent, and despite being told unequivocally by decedent and by Plaintiff Anita Arrington-Bey that decedent Omar Arrington-Bey suffered from bipolar disorder and had not been on medication for some time, Defendant Officers Maurice Ellis, Tim Honsaker, and Phillip Chow ignored the obvious signs of Omar descending into a psychotic episode and made no effort to get treatment for Omar. Defendants could have taken Omar to the hospital, but instead Ellis and Honsaker took him to jail. Defendant Officers Maurice Ellis, Tim Honsaker, and Phillip Chow demonstrated deliberate indifference to the medical needs of Omar Arrington-Bey when Ellis and Honsaker took him straight to jail instead of a hospital.

31. Defendant Officer Tim Honsaker conveyed decedent Omar Arrington-Bey to the Bedford Heights City Jail. Defendant Officer Tim Honsaker was present when decedent was booked and processed into the Jail. During this time, Defendant Officer Tim Honsaker observed decedent Omar Arrington-Bey's "non-stop talking and incoherent rambling." Defendant Officer Tim Honsaker reported that decedent Omar Arrington-Bey even claimed his father was the "son of the devil."

32. Defendant Officer Tim Honsaker indicated in his own incident report that Omar was "rambling and raving about every topic he could think of," and that Omar told him that he "takes medication for a psychiatric condition and ha[d] not taken his medication for several days." Additionally, Defendant Honsaker's report noted that Plaintiff Anita Arrington-Bey confirmed that Omar did, in fact, have a psychiatric condition.

8

33. Defendants placed Decedent Omar Arrington-Bey in a holding cell in the Bedford Heights City Jail and denied him any medical treatment, including providing his medication, for nearly nine hours.

34. During this time, several police and correctional officers became aware of decedent Omar Arrington-Bey's deranged and bizarre behavior, yet none of them did anything to provide him with medical attention.

35. On one occasion while walking him to the restroom, Defendant Assistant Chief of Police David Leonardi saw Omar Arrington-Bey expose his genitals to several correctional officers whilst making incoherent utterances. Defendant Assistant Chief of Police David Leonardi did nothing to provide aid to Omar even though he had personally witnessed Omar's disturbing behavior.

36. Defendant Correctional Officer Cheryl Sindone observed Omar Arrington-Bey "talking bizarre" and eating in a strange manner with his hands. Despite witnessing decedent's deranged mental status, Defendant Sindone failed to provide medical assistance for Omar.

37. Defendant Correctional Officer Jeffrey Mudra observed Omar Arrington-Bey screaming and singing loudly in his cell on multiple occasions. Despite witnessing the decedent conducting these and other strange activities, Defendant Mudra failed to provide any medical assistance to Omar.

38. Defendant Sergeant Phillip Chow observed Omar Arrington-Bey ranting and raving and acting bizarrely with the Jail staff on multiple occasions. Sergeant Chow was also present earlier during Omar's arrest, when Plaintiff Anita Arrington-Bey disclosed that Omar suffered from bipolar disorder. Despite his first-hand observation and knowledge of Omar's untreated mental health issues and apparent breakdown, Defendant Sergeant Phillip Chow did

9

nothing to assist decedent Omar Arrington-Bey in obtaining medical treatment for his serious mental health condition.

39. After nearly nine hours of confinement in a state of confusion, as his mental illness overcame him, and as he exhibited increasingly odd behaviors, Omar Arrington-Bey eventually lost control of his mental faculties. Omar attacked two officers, and the resulting struggle culminated in his death.

40. The Cuyahoga County Medical Examiner conducted an autopsy. The Medical Examiner ruled the cause of death to be homicide due to a cardiac event resulting from a physical altercation and bipolar disease.

41. At every stage of his arrest and detention, Defendants knew or should have known that Omar Arrington-Bey was suffering from a psychotic episode, and that he needed immediate medical attention.

42. At every turn, Defendant Police Officers and Correctional Officers failed to provide Omar Arrington-Bey with mental health screening and mental health care.

43. Defendant City of Bedford Heights has a policy for the urgent treatment of mentally ill inmates. Section 4.1.7 of the Bedford Heights Police Department's Policy manual reads: "An initial mental health screen shall be completed at the Jail for each inmate at the time of intake to determine the need for further mental health evaluation and any immediate safety risks."

44. This policy comports with the statutory requirements of Ohio Administrative Code § 5120:1-8-09, which requires screening and treatment at the time of jail intake for "[c]urrent serious or potentially serious medical or mental health issues needing immediate attention."

45. However, no Jail personnel conducted a mental health screen on Omar Arrington-Bey when he was booked into the jail, in contravention of these policies.

10

46. Defendant Correctional Officers Jeffrey Mudra and Cheryl Sindone observed Omar Arrington-Bey behaving madly and did nothing to provide him relief or medication for his mental illness. Defendants Mudra and Sindone disregarded federal law, state law, local law, and Bedford Heights Police policies by failing to provide Omar Arrington-Bey with an initial mental health screening.

47. Defendant Assistant Chief of Police David Leonardi personally witnessed Omar Arrington-Bey's mental infirmity and bizarre acts inside of the Jail, and yet, he failed to provide any mental health screening or care for Omar, in violation of federal law, state law, local law, and Bedford Heights Police policies.

48. Defendant City of Bedford Heights failed to properly train and supervise its employees, agents, and officers in following the prescriptive law and regulations through adequate policies and procedures regarding the assessment and treatment of jail inmates' mental health issues upon intake.

49. Defendant City of Bedford Heights is also at fault for this tragedy, as the City failed to institute adequate procedures and to train and supervise police and correctional officers in order to ensure that officers complied with State and Constitutional standards for screening and mental health care. Omar Arrington-Bey's total mental breakdown, his attack on correctional officers, and his death were all entirely preventable, had Defendants adequately acknowledged, screened, and provided Omar with mental health care.

50. Defendant Dr. Arnold Feltoon was serving as a contractor for the City of Bedford Heights at the time of Omar Arrington-Bey's admittance to jail and death, and his contract required that he provide a constitutionally and professionally adequate standard of medical care and treatment and overall health service at the Bedford Heights City Jail. Further, Defendant Dr.

11

Feltoon was also serving as Medical Director for the Bedford Heights City Jail at the time Omar Arrington-Bey died. Defendant Dr. Feltoon owed Plaintiff's decedent, Omar Arrington-Bey, a duty of reasonable care. Defendant Dr. Feltoon was deliberately indifferent and failed to treat Plaintiff's decedent in a manner that a physician of ordinary skill, care and diligence would have done under similar conditions and as a direct and proximate result of such failing, Plaintiff's decedent's serious medical needs were left untreated and Omar subsequently died as a result of his untreated mental illness.

51. Defendant City of Bedford Heights has a written policy to provide psychiatric triage at the time of intake into the Jail. When there is a mental health emergency, there are guidelines in place which call for special treatment and care for mentally ill inmates. In contravention of these policies, no special treatment or care was given to Omar by any of the Defendants, despite each of them having actual and/or constructive knowledge of his descent into a mental health breakdown and psychotic episode.

52. By failing to provide Omar-Arrington-Bey with the appropriate screening and medical care, Defendants displayed a deliberate indifference to Omar's medical needs. This deliberate indifference was a direct, actual, and proximate cause of Omar Arrington-Bey's death.

## FIRST CLAIM FOR RELIEF
### (42 U.S.C. Section 1983 - Individual Defendants)

53. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

54. During all times relevant herein, named individual Defendants were deliberately indifferent to the serious medical needs of decedent Omar Arrington-Bey as outlined in this Complaint. Despite knowledge of his serious medical and psychological conditions, their failures

Electronically Filed 10/17/2014 09:59 / / CV 14 834416 / Confirmation Nbr. 261932 / CLJSZ

directly and proximately caused his death, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Section 1983.

**SECOND CLAIM FOR RELIEF**
**(42 .S.C. Section 1983 – City of Bedford Heights)**

55. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

56. Defendant City of Bedford Heights was obligated to properly train, supervise, and create policies and procedures for the staff at the Jail in the treatment of persons who are incarcerated and who are physically and/or mentally disturbed or who pose a risk of harm to themselves or others. Had such generally accepted training, supervision, policy, and practice been in place, decedent would have been properly monitored and treated, and his life would have been saved. This is demonstrated by the fact that at least six police and correctional staff failed to take appropriate steps when dealing with an inmate with a mental health breakdown.

57. At all times relevant herein, Defendant City of Bedford Heights recklessly failed, and were deliberately indifferent to the need to adequately train, supervise, screen, test, and discipline the Jail staff in mental illness detection, prevention and treatment techniques.

58. At all times relevant herein, Defendant City of Bedford Heights, recklessly failed, and was deliberately indifferent to develop and institute adequate policies and procedures for the purposes of detecting, protecting and treating mentally ill inmates, and to maintain a jail facility which meets minimum standards pursuant to state and federal law, as well as the Constitutions of the United States and State of Ohio.

59. Moreover, Defendant City of Bedford Heights failed to comply with the State of Ohio minimum jail standards which include minimum standards for screening, training, surveillance, and medical requirements. In short, the Bedford Heights City Jail was out of

13

compliance with these requirements, which are expressly mandated to minimize the loss of life of incarcerated individuals such as the decedent.

60. Defendant City of Bedford Heights approved, authorized and acquiesced in the unlawful and unconstitutional conduct of their respective employees and/or agents named as Defendants.

### THIRD CLAIM FOR RELIEF
### (Willful, Wanton, Reckless, and Negligent Conduct – Ohio Law)

61. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

62. The decedent's suffering and death was proximately caused by the willful, wanton, reckless, and negligent conduct, and the deliberate indifference of the individual Defendants, jointly and severally, who failed in carrying out their lawful duties, which involved detecting, monitoring, protecting, treating and preventing the decedent from attempting harm on himself or others. These Defendants' conduct was willful, wanton, and/or reckless and under Chapter 2744 of the Ohio Revised Code, and Defendants do not have immunity for said misconduct.

63. The neglect and failure of the individual Defendants was so severe as to indicate deliberate indifference to serious medical and psychological needs, and upon finding decedent in an apparent state of grave mental derangement, Defendants failed to meet their obligation to take reasonable measures to provide the decedent with the appropriate level of care for a medical emergency.

### FOURTH CLAIM FOR RELIEF
### (Negligence – Against Defendant Dr. Feltoon – Ohio Law)

64. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

14

65. Defendant Dr. Arnold Feltoon, who owed Plaintiff's decedent a duty of reasonable care, failed to treat decedent Omar Arrington-Bey in a manner that a physician of ordinary skill, care and diligence would have done under similar conditions and as a direct and proximate result of such failing, Plaintiff's decedent's serious medical needs were left untreated and subsequently died as a result of his untreated mental illness.

### FIFTH CLAIM FOR RELIEF
(Wrongful Death Action)

66. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

67. Plaintiff further states that she brings this wrongful death action under Ohio Revised Code § 2125 for the exclusive benefit of the next-of-kin of Plaintiff's decedent.

68. Defendants City of Bedford Heights and its employees, Timothy Honsaker, Maurice Ellis, David Leonardi, Jeffrey Mudra, Cheryl Sindone, and Phillip Chow all engaged in willful, wanton, and reckless conduct against Plaintiff's decedent, and violated his constitutional rights as described herein, which resulted in his injuries and death.

69. Funeral and burial expenses have been incurred as a result of Plaintiff's decedent's untimely death.

70. Medical and other related expenses in an amount which will be definitely ascertained at the time of trial, have been incurred as a result of Defendants' unlawful treatment of Plaintiff's decedent.

71. As a consequence of the wrongful death of Plaintiff's decedent, Omar Arrington-Bey, as alleged in the aforementioned federal and state claims, the next-of-kin have suffered, among other things, mental anguish and such other damages as are enumerated under Ohio Revised Code § 2125 as will be established at trial.

## SIXTH CLAIM FOR RELIEF
(Survivorship Action)

72. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

73. Plaintiff further claims that as a direct and proximate result of the willful, wanton, reckless, and unconstitutional conduct of the Defendants as alleged herein, individually and/or jointly, and/or by and through their agents and/or employees, Plaintiff's decedent was caused to suffer mental anguish and conscious physical pain and suffering prior to his death, for which compensation is sought.

74. The Plaintiff brings this survivor action pursuant to Ohio Revised Code § 2305.21.

## PRAYER FOR RELIEF

75. The wife, children, parents, and siblings of Omar Arrington-Bey have been damaged pursuant to Ohio Revised Code § 2125.02(A)(1) and the common law of Ohio. As the direct and proximate consequence of the Defendants' actions, Plaintiff, as Administratrix of Decedent's Estate, on her own behalf, and on behalf of the next of kin and survivors, has suffered damages including those set out in Ohio Revised Code § 2125.02(B). Plaintiff prays for judgment against Defendants for:

    A.    Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial for the violation of Plaintiff's decedent's rights and his wrongful death;

    B.    Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton and reckless and conduct;

    C.    Declaratory and injunctive relief to require the institution of policies, procedures, and training for the Bedford Heights Police and Jail to bring them into compliance with constitutional standards;

Electronically Filed 10/17/2014 09:59 / / CV 14 834416 / Confirmation Nbr. 261932 / CLJSZ

D. Attorneys' fees and the costs of this action pursuant to 42 U.S.C. Section 1988; and

E. All other relief which this Honorable Court deems equitable and just.

**A JURY IS REQUESTED TO HEAR THIS MATTER.**

s/ Terry H. Gilbert
TERRY H. GILBERT (0021948)
Attorney for Plaintiff
Friedman & Gilbert
55 Public Square, Suite 1055
Cleveland, OH 44113-1901
Telephone: (216) 241-1430
Facsimile: (216) 621-0427
E-Mail: tgilbert@f-glaw.com